UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SANTIAGO PINEDA and all others similarly situated under 29 U.S.C. 216(B), and MARIA PENA, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:13-CV-0588-B |
| JTCH APARTMENTS, LLC and SIMONA VIZIREANU, | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Following a jury verdict in favor of Plaintiff Santiago Pineda on his Fair Labor Standard Act ("FLSA") claim for unpaid overtime wages and retaliation,[1] Plaintiff filed two post-verdict motions now before the Court: Plaintiff's Motion for Attorney's Fees and Costs Pursuant to 29 U.S.C. § 216(b) (doc. 96)—supplemented by an Addendum (doc. 102)[2]—and Plaintiff's Motion for Imposition of Liquidated Damages and Entry of Judgment (doc. 97), both filed on March 19, 2015. For the reasons that follow, the Court **GRANTS** Plaintiff's Motion for Attorney's Fees and Costs (doc. 96), subject to the reductions described below, and **GRANTS** Plaintiff's Motion for Imposition of Liquidated Damages and Entry of Judgment (doc. 97).

---

[1] Although this case was originally filed by Plaintiffs Santiago Pineda and his wife Maria Pena, only Plaintiff Pineda's claims were presented to the jury. *See* doc. 89, Jury Instructions. Moreover, the motions do not present issues pertaining to Plaintiff Maria Pena. Accordingly, the Court only discusses the post-verdict matters as they relate to Plaintiff Santiago Pineda.

[2] Plaintiff filed his Addendum to his Motion for Attorney's Fees (doc. 102) on April 24, 2015 to reflect the hours spent briefing the matters presently before the Court. This addendum is thus considered along with Plaintiff's Motion for Attorney's Fees and Costs.

I.

BACKGROUND

This is an action for overtime wages and retaliation brought under the FLSA by Plaintiff Santiago Pineda, a maintenance worker employed by an apartment complex owned by Defendant JTCH Apartments, LLC ("JTCH"). Defendant Simona Vizireanu, in turn, owned and managed Defendant JTCH. Plaintiff performed maintenance and repair work for the JTCH apartments, where he also resided with his family.

At trial, Plaintiff claimed that he was not paid for the overtime hours he worked, in violation of the FLSA, 29 U.S.C. § 207(a)(1). In addition, he claimed that Defendants retaliated against him in violation of the FLSA, 29 U.S.C. § 215(a)(3), for demanding his unpaid overtime wages. Specifically, Plaintiff claimed that Defendants retaliated against him by issuing him a notice to vacate his apartment and requiring him to make certain payments.

On February 17, 2015, the jury, after hearing all the evidence presented at trial, returned a verdict in favor of Plaintiff. *See* doc. 90, Jury Verdict. In doing so, the jury made a number of findings. First, the jury found that Plaintiff proved by a preponderance of the evidence that he was an employee of both Defendants JTCH and Vizireanu during the relevant time period. *Id.* at 10. Second, the jury concluded that Plaintiff was engaged in commerce or in the production of goods for commerce, and that he was employed by an enterprise which, in turn, employed individuals engaged in such activity. *Id.* at 12. Third, the jury determined that Defendant JTCH and/or Defendant Vizireanu failed to pay Plaintiff his overtime wages, equivalent to one and one-half times his regular rate of pay for hours worked over forty during any seven-day workweek. *Id.* at 15. The jury thus concluded that damages in the amount of $1,426.50 would fairly and reasonably compensate Plaintiff

for any unpaid overtime hours he worked while employed by Defendants. *Id.* at 17. With respect to the retaliation claim, the jury found that Defendant JTCH and/or Defendant Vizireanu took an adverse employment action against Plaintiff and retaliated against him because he filed an FLSA complaint. *Id.* at 20, 22. The jury determined that the sum of $3,775.50 would compensate Plaintiff for damages caused by Defendants' retaliation against him. *Id.* at 24.

Following the trial, the Court ordered the parties to meet to attempt to resolve any disputes regarding attorney's fees in the case, but no agreement could be reached. *See* doc. 88, Attorney's Fees Agreement Order; docs. 93 & 94, Reports Regarding Meeting on Attorney's Fees. Thus, on March 19, 2015, in accordance with the Court's instructions, Plaintiff filed the present motions seeking attorney's fees and liquidated damages. *See* docs. 88, 96, 97. On April 9, 2015, Defendants submitted one response addressing both of Plaintiff's post-trial motions (doc. 100), to which Plaintiff replied (doc. 101) on April 23, 2015. These motions are now ripe for consideration. Before addressing these motions, the Court begins with a brief review of the law governing claims under the FLSA.

## II.
## LEGAL STANDARD

The FLSA was passed in 1938 in an effort "to 'protect all covered workers from substandard wages and oppressive working hours.'" *Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 581 (5th Cir. 2013) (quoting *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)). Given its remedial purposes, courts generally "construe the FLSA liberally in favor of employees." *McGavock v. City of Water Valley, Miss.*, 452 F.3d 423, 424 (5th Cir. 2006) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

Among its protections, the FLSA requires that employers pay employees "at a rate not less than one and one-half times the regular rate" of pay for any hours the employees work in excess of forty during the workweek. 29 U.S.C. § 207(a)(1). To enforce this rule, the FLSA "gives employees the right to bring a private cause of action on their own behalf and on behalf of 'other employees similarly situated.'" *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013) (citing 29 U.S.C. § 216(b)). Employees who successfully assert a private cause of action for unpaid overtime wages under the FLSA are entitled to collect damages from their employers "in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). In addition, the FLSA prohibits employers from retaliating against an employee "because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA] . . . ." *Id.* § 215(a)(3).

Prevailing plaintiffs may also collect reasonable attorney's fees and costs associated with the prosecution of their FLSA claims. *See* 29 U.S.C. § 216(b); *Saizan v. Delta Concrete Products Co.*, 448 F.3d 795, 799 & n.7 (5th Cir. 2006).

## III.

## ANALYSIS

In his post-trial motions, Plaintiff requests that the Court award him attorney's fees and costs, given that he prevailed on his FLSA overtime and retaliation claims. Docs. 96, Pl.'s Mot. for Att'y Fees & Costs ("Att'y Fees Mot.") 2; 102, Addendum to Mot. For Att'y Fees. He further asks that the Court award him liquidated damages in an amount equal to his overtime back-pay award. Doc. 97, Pl.'s Motion for Imposition of Liquidated Damages and Entry of Judgment ("Liquidated Damages Mot.") 2. Finally, Plaintiff moves the Court to enter a final judgment in this case and award him

post-judgment interest in such final judgment.³ *Id.* at 9. The Court addresses these requests, in turn, below.

A.   *Attorney's Fees and Costs*

The Court first considers Plaintiff's request to recover attorney's fees and costs as a prevailing party in this matter. Att'y Fees Mot. 2. In his original motion, Plaintiff sought $98,509.50 in attorney's fees and $7,947.33 in costs. *Id.* at 3. In a subsequent Addendum to this motion, Plaintiff requested an additional $3,801.00 in attorney's fees incurred in drafting briefing to address arguments raised by Defendants following trial. Doc. 102, Addendum to Motion for Attorney's Fees ("Addendum"). Thus, Plaintiff seeks a total of $102,310.50 in attorney's fees and $7,947.33 in costs. Defendants do not directly engage with Plaintiff's computation of these amounts, but they instead assert that the claims were "frivolous and brought in bad faith," and they attempt to raise factual challenges to the claims as well as affirmative defenses not previously pled. In sum, Defendants' response contains very little discussion of the substantive issues underlying Plaintiff's claim for

---

³ In his Motion for Imposition of Liquidated Damages, Plaintiff also urges the Court to hold Defendant JTCH and Defendant Vizireanu jointly and severally liable for the damages award. Liquidated Damages Mot. 7–9. The Court agrees that the two Defendants are jointly and severally liable in this case, and it need not devote any additional discussion on this matter, as the jury returned a verdict finding that: (1) both Defendants JTCH and Vizireanu employed Plaintiff during the relevant time period, Jury Verdict 10; (2) both Defendant JTCH and/or Defendant Vizireanu failed to pay Plaintiff the overtime wages to which he was entitled, *id.* at 15; (3) damages in the amount of $1,426.50 would fairly and reasonably compensate Plaintiff for any unpaid overtime hours he worked while employed by Defendants, *id.* at 17; (4) Defendant JTCH and/or Defendant Vizireanu retaliated against Plaintiff because he filed an FLSA complaint, *id.* at 20, 22. Because the jury found that both Defendants were Plaintiff's employers and that they failed to compensate him for overtime hours worked and retaliated against him, there is no reason to hold only one of these Defendants accountable for the damages awarded. Accordingly, Defendant JTCH and Defendant Vizireanu are jointly and severally liable for the damages awarded in this case. *Lee v. Coahoma Cnty., Miss.*, 937 F.2d 220, 226 (5th Cir. 1991) ("If an individual with managerial responsibilities is deemed an employer under the FLSA, the individual may be jointly and severally liable for damages resulting from the failure to comply with the FLSA.") (citing *Donovan v. Grim Hotel, Co.*, 747 F.2d 966 (5th Cir. 1984)).

attorney's fees. Defendants' only relevant arguments posit that no time can be billed for internal correspondence and that the hours worked on this matter were not reasonable, because Plaintiff prevented a reasonable settlement at an earlier stage of the litigation. Doc. 100, Defs.' Resp. 6–7. Thus, Defendants insist that no attorney's fees should be awarded in this case.

In the Fifth Circuit, determining reasonable attorney's fees generally begins with a calculation of "the 'lodestar.'" *Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 380 (5th Cir. 2010). "The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work." *Black*, 732 F.3d at 502 (citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012)). "There is a strong presumption of the reasonableness of the lodestar amount." *Id.* (citing *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006)). Nevertheless, after calculating the lodestar, courts often evaluate the resulting value in relation to "the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)." *Jimenez*, 621 F.3d at 380.

The twelve *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

Under certain circumstances, "a district court may enhance or decrease the amount of attorney's fees based on 'the relative weights of the twelve factors set forth in *Johnson*.'" *Black*, 732 F.3d at 502 (citing *Saizan*, 448 F.3d at 800). Lodestar enhancements, however, are permitted only in "rare and exceptional circumstances." *Perdue*, 559 U.S. at 552. Moreover, "[t]he lodestar may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar." *Black*, 732 F.3d at 502 (citing *Saizan*, 448 F.3d at 800).

The Court therefore begins by calculating the lodestar of the attorney's fees requested, addressing any relevant arguments Defendants raise. Then, the Court examines the proposed award in view of the *Johnson* factors.

1. Lodestar Calculation

In this case, Plaintiff provides the following values for the work performed in the lawsuit by his five attorneys and one legal assistant, based on the Motion for Attorney's Fees and Addendum:

| Professional | Hourly Rate | Hours | Lodestar |
|---|---|---|---|
| J.H. Zidell, Esq. | $350 | 43.40 | $15,190.00 |
| Robert Manteuffel, Esq. | $350 | 153.50 | $53,725.00[4] |
| Niki Zhou, Esq. | $200 | 11.10 | $2,220.00 |
| Joshua Petersen, Esq. | $230 | 112.60 | $25,898.00[5] |

---

[4] The hours worked by Robert Manteuffel reflect the amount provided in Plaintiff's original Motion for Attorney's Fees (which include 152.30 hours worked at a rate of $350, for a total of $53,305.00), as well as the amount provided in Plaintiff's Addendum (which include 1.20 hours worked at a rate of $350, for a total of $420.00). *See* Att'y Fees Mot. 3; Addendum 2.

[5] The hours worked by Joshua Petersen reflect the amount provided in Plaintiff's original Motion for Attorney's Fees (which include 97.90 hours worked at a rate of $230, for a total of $22,517.00), as well as the amount provided in Plaintiff's Addendum (which include 14.70 hours worked at a rate of $230, for a total of $3,381.00). *See* Att'y Fees Mot. 3; Addendum 2.

| | | | |
|---|---|---|---|
| Steven Levesque, Esq. | $200 | 2.20 | $440.00 |
| Rosa Owens (legal assistant) | $90 | 53.75 | $4,837.50 |
| **Total**s | | 376.55 | $102,310.50[6] |

*See* Att'y Fee Mot. 3; Att'y Fees Mot. Exs. A–B; Addendum 1–2; doc. 102-1, Addendum Ex. A.

Plaintiff's attorneys present detailed billing records supporting the hours worked and describing the work performed. *See id.* They further direct the Court to other cases in this division where the award reflected a similar hourly rate. *See* Att'y Fees Mot. Exs. D–G, I; *Arriaga v. Califco, LLC*, No. 3:12-CV-94-D, 2013 WL 5928852, at *1 (N.D. Tex. Nov. 5, 2013) (concluding that a $350 hourly fee is a reasonable rate in an FLSA case and aligns with the fees "customarily charged in this locality for similar legal services."). In response, Defendants do not dispute the reasonableness of the hourly rate requested for Plaintiff's attorneys and legal assistant, which the Court finds no reason to further question and deems to be reasonable based on the examples of rates Plaintiff's counsel submit in support. Instead, Defendants attack Plaintiff's fee request by arguing that many of the fees are for "internal correspondence," that Plaintiff presented frivolous claims, and that Plaintiff's counsel attempted to drive up attorney's fees without a legitimate reason. Defs.' Resp. 6–7. Specifically, Defendants note that, in February 2013, after the initiation of the lawsuit, they made a settlement offer of $959 for Plaintiff's overtime claims. *Id.* at 2. However, Plaintiff rejected the offer and insisted on a settlement of $60,000. *Id.* To show that the requested fees are unreasonable,

---

[6] The total amount reflects the hours and rates provided in Plaintiff's original Motion for Attorney's Fees (which include 360.65 hours worked, for a total of $98,509.50), as well as the amount provided in Plaintiff's Addendum (which include 15.90 hours worked, for a total of $3,801.00). *See* Att'y Fees Mot. 3; Addendum 2.

Defendants point to *Goss v. Killian Oaks House of Learning*, where the court denied attorney's fees to counsel that brought a frivolous FLSA suit and "grossly exaggerated the amount of hours expended." 248 F. Supp. 2d 1162, 1169 (S.D. Fla. 2003).

In reply to these attacks on the requested award, Plaintiff first distinguishes *Goss* from the present case. Doc. 101, Pl.'s Reply 4. In *Goss*, the court determined that the plaintiff's FLSA claim was clearly without basis and that her counsel thus brought a frivolous lawsuit. 248 F. Supp. 2d at 1164–65, 1169. Moreover, the parties reached a settlement approximately two months after the case was filed. *Id.* at 1164–65. Despite this, plaintiff's counsel continued to "churn" the file and accumulate a significant amount of unnecessary attorney's fees. *Id.* at 1168–69. Based on counsel's conduct, the court in *Goss* concluded that it would be unreasonable and unjust to award any attorney's fees to plaintiff's counsel. *Id.* at 1169. Plaintiff notes that, in contrast to the facts of *Goss*, the present case involved a non-frivolous claim for multiple years of unpaid overtime as well as a retaliation claim. Moreover, they note that Defendants have "filed numerous and sometimes repetitive motions with the Court which have required Plaintiff[] to respond time and time again to essentially the same arguments." Pl.'s Reply 4–5. Regarding the issue of whether settlement was purposefully avoided so as to increase attorney's fees, Plaintiff explains that Defendants' initial settlement offer of $959 "failed to account for all of Plaintiff Pineda's overtime damages and provided nothing for the retaliation claim." *Id.* at 5. Plaintiff further clarifies that he expected the settlement offer to reflect compensation for emotional damages and pain and suffering, which he hoped to recover under his retaliation claim.[7] Plaintiff denies any accusation that he or his counsel obstructed

---

[7] The issue of emotional damages was not presented to the jury, as the Court determined that the FLSA does not allow the recovery of damages for emotional distress or punitive damages for retaliation claims.

the settlement of the case, remarking that, after his request for $60,000, Defendants "did not provide counter-offers for anything more than their initial settlement offer of $959.00 until after the first day of trial had begun and Plaintiffs had incurred significant costs and fees." *Id.*

Moreover, while Plaintiff acknowledges that the fees incurred in this case are "unusual," he insists that they are the "result of being forced to respond to numerous filings by Defendants and the strategy employed by Defendants in their prosecution of this case." *Id.* Plaintiff adds that he was "required to expend an inordinate amount of effort attempting to coordinate with Defendants to prepare pleadings, schedule Court-ordered mediation, and to schedule depositions." Atty's Fees Mot. 8. As the case was "hotly contested before, during, and after trial," Plaintiff was required to address a vast array of issues that were not anticipated to be points of contention. *Id.* Lastly, Plaintiff does not speak English and thus required extensive use of translation during all phases of the litigation, which further increased the time spent on the case. *Id.* at 8.

Finally, with respect to the issue of whether internal correspondence can be included in Plaintiff's attorney's fee award, he observes that Defendants point to no authority that such correspondence between attorneys is not billable time. *Id.* In addition, he indicates that "much of Manteuffel's correspondence was either to or from counsel for Defendants," and that "internal correspondence with Mr. Zidell is most often an attempt by Plaintiff['s] counsel to leverage Mr. Zidell's extensive experience in this area of the law so as to cut down extensively on the amount of research required by other attorneys," which Plaintiff explains "ultimately resulted in fewer attorney hours being expended on this case." *Id.* at 5–6.

---

*Douglas v. Mission Chevrolet*, 757 F. Supp. 2d 637, 640 (W.D. Tex. 2010).

After considering the parties' respective arguments, the Court finds no indication that Plaintiff engaged in a frivolous pursuit of his claims so as to increase attorney's fees, or that the attorneys engaged in behavior comparable to that described in *Goss* or otherwise objectionable. The rejection of Defendants' initial settlement offer appears to have been based on a reasoned expectation that the overtime claim deserves higher damages and that the retaliation claim also merits compensation. Following Plaintiff's settlement demand, Defendants did not make a substantially different counter-offer, thus explaining the parties' inability to settle the case. Moreover, in the weeks prior to and during trial, the Court observed the delay and complications caused by Defendants' counsel's lack of coordination with Plaintiff and her difficulty in ensuring the submission of necessary pretrial and trial materials. Plaintiff's remaining arguments as to the additional work created by Defendants' prolific and repetitive motions further support Plaintiff's need to expend considerable time in the litigation of this case. Lastly, Plaintiff has provided ample records detailing the nature and extent of his attorneys' work on this case, and Defendants have provided no authority suggesting that internal communications were meant to needlessly increase fees. *See* Att'y Fees Mot. 3; Att'y Fees Mot. Exs. A–B; Addendum 1–2; Addendum Ex. A.

2. *Johnson* Factors

Having disposed of Defendants' objections to the award, the Court further examines Plaintiff's fee request under the relevant *Johnson* factors to determine whether to adjust the fee upward or downward.[8] *Watkins v. Input/Output Inc.*, 531 F. Supp. 2d 777, 781 (S.D. Tex. 2007). "The

---

[8] The twelve *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and

most important factor to consider is the degree of success obtained. If the success is limited, the lodestar should be reduced to reflect that. But the fee award need not be precisely proportionate to the result obtained." *Hilton v. Executive Self Storage Assocs., Inc.*, No. H-06-2744, 2009 WL 1750121, at *8 (S.D. Tex. June 18, 2009) (citing *Saizan*, 448 F.3d at 802–03 & n.42).

Upon considering the requested attorney's fees in relation to the twelve *Johnson* factors, the Court concludes that, on balance, a downward adjustment of 25% is warranted. Starting with the first factor—time and labor required—counsel avers that it expended significant hours serving the Plaintiff over the course of this two-year lawsuit. As this matter was considered in the lodestar calculation, it requires no further discussion. Regarding the second *Johnson* factor, the Court discerns no significantly novel, complex, or unresolved issues in this case, despite Plaintiff's argument to the contrary. Atty's Fees Mot. 8. Turning to the third factor, while significant skill is needed in any lawsuit, there is nothing to suggest that this case demanded extraordinary skill. With respect to the fourth factor, there is no indication that Plaintiff's attorneys were precluded from handling other matters due to their acceptance of the case. Skipping to the sixth factor, the fee arrangement in this case was contingent, demonstrating the risk associated with taking Plaintiff's case.

It is mainly the eighth factor—the results attained—that prompts the Court to reduce the attorney's fee award. Although there is no requirement that the fee be proportional to the amount recovered, courts may reduce attorney's fees based on the degree of success obtained. *Saizan*, 448

---

the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19. The *Johnson* factors that are not particularly relevant, and that the Court will therefore not address, include: (5) the customary fee—which was factored into the lodestar; (7) time limitations imposed on attorneys; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; and (11) nature and length of the attorney-client relationship.

F.3d at 802–03 & n.42. As the Fifth Circuit has made clear, "[t]he amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded." *W. v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 395 (5th Cir. 2003) (quoting *Hernandez v. Hill Country Tel. Co-op.*, 849 F.2d 139, 144 (5th Cir. 1988)). Here, Plaintiff's counsel request $102,310.50 in fees, which is grossly disproportionate to the modest recovery—$1,426.50 in unpaid overtime wages and $3,775.50 in damages related to retaliation—and thus warrants a reduction. *See Lewis v. Kendrick*, 944 F.2d 949, 958 (1st Cir. 1991) (attorney's fee request of over $50,000 denied in light of jury verdict of $1,000).

Turning to the twelfth factor—awards in similar cases—Plaintiff's attorneys have submitted copies of orders awarding them fees in similar FLSA matters in this division, which all reflect significantly lower awards. *See* Att'y Fees Mot. Exs. D–F, I; *Alonso v. Tepa Mar Y Tierra, Inc.*, No. 3:11-CV-1783-O (N.D. Tex. July 14, 2014); *Arriaga*, 2013 WL 5928852; *Hernandez v. Aleman Constr. Co.*, No. 3:10-CV-2229-BN, 2013 WL 5873289 (N.D. Tex. Nov. 1, 2013); *Madriz v. Wright Tree Service, Inc.*, No. 3:11-CV-0251-N (N.D. Tex. June 14, 2013) (where attorneys requested $162,235 in fees in an FLSA case yielding a recovery of $50,670 in wages and liquidated damages, the court reduced the attorney's fees award by 10% for block billing and by an additional 10% to account for the discrepancy between the fees incurred and the recovery, among other reductions).

In sum, the Court considers the wide discrepancy between the recovery and the fees requested, awards in similar cases in this division, and the remaining *Johnson* factors, which either do not weigh against reducing the lodestar or which highlight the relative simplicity of the case and the limited issues that it raised. In light of these factors, the Court deems it appropriate, in its discretion, to reduce the requested attorney's fees by 25%. Therefore, the Court concludes that

Plaintiff, as a prevailing claimant under the FLSA, is entitled to collect from Defendants $76,732.88 in attorney's fees and $7,947.33[9] in costs.

B.     *Liquidated Damages*

In his Motion for Imposition of Liquidated Damages and Entry of Judgment (doc. 97), Plaintiff asks the Court to award him liquidated damages in an amount equal to the amount of his overtime back-pay award. Liquidated Damages Mot. 2. The FLSA allows employees to recover liquidated damages in an amount equal to their "unpaid overtime compensation" award. 29 U.S.C. § 216(b). Though at one time they were "mandatory," liquidated damages "can now" be refused "if the court concludes that the employer acted in 'good faith' and had 'reasonable grounds' to believe that its actions complied with the FLSA." *Singer*, 324 F.3d at 823–24 (quoting 29 U.S.C. § 260).

The "good faith" defense, however, is not applicable in this case, as the Defendant employers have not met their "substantial burden of demonstrating good faith and a reasonable belief that [their] actions did not violate the FLSA." *Id.* at 823 (citation and quotation marks omitted). As Plaintiff notes, during trial, Defendants presented no evidence that they attempted to ascertain whether or not they were in compliance with the FLSA or whether they were correct to classify Plaintiff as an independent contractor rather than as an employee. *See* Liquidated Damages Mot. 6. Defendants likewise neglect to advance any such arguments in their response to the present motion for liquidated damages. In addition, there is no indication that Defendants had reasonable grounds

---

[9] Plaintiff has provided proof of the costs incurred in this case, which appear reasonable and to which Defendants raise no objections. *See* Att'y Fees Mot. 3; Att's Fees Mot. Ex. C. Accordingly, no reductions are imposed on the award for costs.

to believe that Plaintiff was exempt from FLSA's overtime provisions, nor did they assert any exemptions in their pleadings. *See* doc. 13, Answer to Am. Compl.

Defendants' sole argument regarding the imposition of liquidated damages relates to a matter that has already been addressed by the Court during trial and in the Court's order on Defendants' motion for new trial and judgment as a matter of law. Defendants again insist that, while they employed Plaintiff, they provided him with economic benefits in the form of reductions to his rent at the JTCH apartments. Defs.' Resp. 4–5. They thus maintain that these rental rebates constituted compensation for Plaintiff's overtime work. *Id.* Defendants provide no authority to support their claim that such a rebate can evince a "good faith" defense on their part. Moreover, as previously explained, the provision of rent rebates does not compensate for a failure to pay overtime wages. Although in certain situations, an employee's wages may include "the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities," such reasonable cost of lodging can only be computed when determining the employee's regular rate of pay, such as when assessing whether the employee's regular rate comports with the FLSA's minimum wage requirements. 29 U.S.C. § 203(m)[10]; *Walling v. Alaska Pac. Consol. Mining Co.*, 152 F.2d 812, 815 (9th Cir. 1945), *cert. denied*, 327 U.S. 803 (1946). The provision of housing is not, however, to be considered payment for overtime wages. *Walling*, 152 F.2d at 815 (rejecting employer's argument that the cost of board and lodging can be included as part of an employee's overtime compensation). Thus, even if Defendants had presented sufficient evidence establishing

---

[10] The regulations implementing 29 U.S.C. § 203(m) offer three methods of determining whether housing provided by the employer may be considered part of employees' "wages." *See* 29 C.F.R. § 531.33(a). Defendants have neither relied on these methods nor substantiated their assertions with the necessary records. *Reich v. Crockett*, 68 F.3d 469, *1–2 (5th Cir. 1995).

that the housing provided to Plaintiff should be accounted for somehow, the cost of such housing would only increase Plaintiff's regular rate, and thereby increase the overtime wages owed to Plaintiff; it cannot, however, "simply be used as a free-standing credit for overtime to be invoked at will whenever Plaintiff[] happen[s] to work more than 40 hours a week." *Mendoza v. Uptown Buffet, Inc.*, No. 09-22799, 2010 WL 3768052, at *3 (S.D. Fla. Sept. 16, 2010); *see McLaughlin v. Quan*, No. 87-A-423, 1988 WL 62595, at *4 (D. Colo. June 17, 1988) ("As a general rule, lodging and board provided by an employer to an employee is properly considered a component of the employee's wages, such that the cost of these facilities must be added into the employee's regular rate for purposes of determining the proper overtime rate."). Therefore, Defendants cannot rely on any rent rebate to argue that they acted in "good faith" and had "reasonable grounds" to believe that their actions comported with the FLSA.

In sum, Defendants make little effort to contest the impositions of liquidated damages or to establish a "good faith" defense. *See* Defs.' Resp. 1–8. The Court likewise discerns no basis for finding that Defendants acted in "good faith" and had "reasonable grounds" to believe that they complied with the FLSA. Accordingly, the Court grants Plaintiff's request for liquidated damages in an amount equal to his back-pay overtime wages award, resulting in a liquidated damages award of $1,426.50.

C.   *Post-Judgment Interest*

Lastly, Plaintiff requests that post-judgment interest be included in the Court's final judgment. Liquidated Damages Mot. 3. Pursuant to 28 U.S.C. § 1961, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). The Fifth Circuit has determined that such post-judgment interest is permitted for damages awarded under the FLSA. *See Reeves v. Int'l Tel. & Tel. Corp.*, 705 F.2d 750, 751–52 (5th Cir. 1983). Defendants raise

no objections on this matter, and the Court finds no reason why post-judgment interest should not be awarded. Accordingly, the Court grants Plaintiff's request that post-judgment interest be included in the judgment entered pursuant to this Order.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Attorney's Fees and Costs (doc. 96), subject to the reductions described above, and **GRANTS** Plaintiff's Motion for Imposition of Liquidated Damages and Entry of Judgment (doc. 97). As detailed above, the Court concludes that Plaintiff is entitled to recover $5,202.00 for his overtime and retaliation claims under the FLSA.[11] The Court also awards Plaintiff $1,426.50 in liquidated damages. Plaintiff's counsel is further entitled to attorney's fees in the amount of $76,732.88 and costs in the amount of $7,947.33. The judgment, which will follow this Order, shall also include post-judgment interest.

SO ORDERED.

SIGNED: August 27, 2015.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[11] This figure is based on the jury's award of $1,426.50 in damages for unpaid overtime and $3,775.50 in damages for Defendants' retaliation against Plaintiff. *See* Jury Verdict.